IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Case No. 7:08-cv-00116-D

| | | |
|---|---|---|
| JEANETTE E. NEWMAN and NORMA E. REGISTER, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS |
| FIRST MONTAUK FINANCIAL CORP., FIRST MONTAUK SECURITIES CORP., KENNETH R. BOLTON, VICTOR K. KURYLAK, and CELESTE M. LEONARD, | ) ) ) ) ) ) | |
| Defendants. | ) | |

Pursuant to Local Rule 7.1(d), Defendants First Montauk Financial Corp. ("FMFC"),

First Montauk Securities Corp. ("FMSC"), Kenneth R. Bolton ("Bolton"), Victor K. Kurylak

("Kurylak"), and Celeste M. Leonard ("Leonard") (collectively referred to herein as the

"Defendants") respectfully submit this Memorandum of Law in Support of their motion: (a)

pursuant to Rule12(b)(6) and/or Rule 9(b) of the Federal Rules of Civil Procedure, to dismiss the

Complaint as against them; and (b) for such other and further relief as this Court deems just and

appropriate.

**Preliminary Statement**

After being advised by their personal representative that they should invest in a

speculative private offering to defray significant tax consequences, Plaintiffs have now

commenced an action against a broker, his brokerage firm, the brokerage firm's holding

company, the Chairman of the Board of both companies and the Chief Compliance Officer of the

brokerage firm.  Notably, Plaintiffs have not named the individuals that actually directed them to the investments at issue.

Here, Plaintiffs allege that they have been defrauded by certain Defendants, have been the victims of the negligent misrepresentations by all Defendants, and that Defendants breached their fiduciary duties to Plaintiffs.  Plaintiffs also seek to hold FMFC liable under an inapplicable alter ego theory.  As discussed below, Plaintiffs' claims are completely devoid of merit.

First, Plaintiffs' fraud action should be dismissed because Defendants fail to allege the elements necessary to sustain such cause of action.  In particular, Plaintiffs attempt to conflate the alleged "misrepresentations" made by Bolton with certain omissions that Plaintiffs attempt to attribute to Defendants.  Notwithstanding this attempt at legal "sleight of hand," the Complaint is defective as a matter of law because Plaintiffs fail to allege that Defendants had knowledge of the underlying facts.  Moreover, the Complaint fails to allege that Plaintiffs ever spoke directly with any Defendant.  As such, Plaintiffs could not reasonably rely upon any of the alleged fraudulent statements that were purportedly communicated to their attorneys because Plaintiffs fail to allege which information was communicated to them.  To that end, Plaintiffs' fraud allegations are not pled with the particularity required by Rule 9(b).

Second, neither third-party reliance nor actions based upon omissions can form the basis of a negligent misrepresentation claim.  Moreover, Plaintiffs also fail to plead their negligent misrepresentation claim with the requisite particularity.  Third, Plaintiffs fail to plead the allegations necessary to sustain a claim for relief under the North Carolina Securities Act.  Other than intentionally cryptic and conclusory allegations, and like their fraud claims, Plaintiffs fail to allege that Defendants offered or sold the private placement "by means of any untrue statement of material fact or any omission to state a material fact."  Fourth, Plaintiffs' breach of duty claim

appears to be a misnamed breach of fiduciary duty. Notwithstanding, Plaintiffs fail to allege facts necessary to impose a fiduciary duty upon Defendants.

Fifth, Plaintiffs fail to properly allege that Defendants Kurylak and Leonard are liable to Plaintiffs. In the most conclusory fashion possible, Plaintiffs' argument presumes that Defendants Kurylak and Leonard are liable simply because they are officers and/or directors of FMFC or FMFS. Such imprecise pleading fails as a matter of law.

Finally, Plaintiffs seek to impose liability upon FMFC, the holding company for FMSC, based upon an "alter-ego" theory. Notwithstanding, the Complaint fails to meet the pleading required under North Carolina's "instrumentality rule."

Accordingly, for the reasons discussed below, the Court should dismiss the Complaint in its entirety as against Defendants.

## Statement of Facts

### Parties and Relevant Non-Parties

Plaintiffs Jeanette Newman and Norma Register are sisters who reside in North Carolina. (See Compl. ¶ 6.) Plaintiffs' securities broker at Edwards Jones & Co. for all relevant times alleged in the Complaint was non-party Mark McLamb ("McLamb"). (See id. ¶ 15.) Plaintiffs' attorneys for all relevant times were non-parties John Peck ("Peck") and William G. Alexander ("Alexander"). (See id. ¶¶ 15-16.)

Defendant FMFC is a New Jersey corporation and a holding company for FMSC, a broker-dealer and a member of the Financial Industry Regulatory Authority ("FINRA"). (See id. ¶¶ 7-8.) Defendant Bolton is a citizen of New Jersey and was formerly employed by FMSC. (See id. ¶ 9.) Defendant Kurylak is the President and Chief Executive Officer of FMFC and

FMSC.  (See id. ¶ 10.)  Ms. Celeste Leonard ("Leonard") is the Chief Compliance Officer at FMSC.  (See id. ¶ 11.)

**Plaintiffs' Inheritance and Accompanying Tax Consequences**

As part of their inheritance, Plaintiffs' mother deeded to them a large and valuable parcel of land located in North Carolina (the "Property").  (See id. ¶ 13.)  Thereafter, in 2006, Plaintiffs accepted an offer to sell the Property for approximately $3.1 million.  (See id. ¶ 14.)

Initially, Plaintiff Register sought advice concerning the sale of the Property from McLamb, who in turn, referred them to attorney Peck and subsequently his partner, Alexander. (See id. ¶ 15.)  Peck and Alexander, whose firm was called Legacy Lawyers, advised that the sale of the Property would result in "substantial taxable income" to Plaintiffs.  (See id. ¶ 16.)  In light of these tax consequences, Peck and Alexander recommended that Plaintiffs enter into a "like-kind exchange of property" in order to defer taxes that would result as a sale of the Property.  (See id. ¶ 16.)  A "like-kind exchange," also known as a 1031 exchange, permits owners of investment property to defer the capital gains tax that they would owe upon the sale of investment property if they use those proceeds to purchase another replacement investment property.  (See id. ¶ 17.)  Under Section 1031 of the Internal Revenue Code, a seller wishing to engage in a like-kind exchange only has **45** days from the sale of the original property to identify a like-kind replacement property and only **180** days from the date of the sale to close on the purchase of the replacement property.  (See id. ¶ 18.)

**Peck and Alexander Recommend that Plaintiffs Invest in IPofA**

In light of the aforementioned tax consequences from a sale of the Property, Alexander identified and "spoke highly" of a 1031 exchange called Investment Property of America ("IPofA Leasco").  (See Comp., ¶ 16.)  Alexander's recommendation and praise of IPofA was

based upon "his involvement with the company in a number of other like-kind exchanges [that] he arranged for his clients." Id. To this end, Alexander and Peck recommended that Plaintiffs invest in a specific private placement offered by IPofA (the "IPofA Private Placement"). (See id. ¶ 21.) Notably, the Complaint is silent as to whether Plaintiffs "identified" any other replacement properties.

The IPofA Private Placement was an offering of parcel leasehold interests in a regional shopping mall called the West Oaks Mall located in Houston, Texas. (See id. ¶ 22.) As disclosed, the IPofA Private Placement involved significant risks to an investor and, among other things, required that investors represent that they were "accredited investors" prior to investing. (See id. ¶ 28.) The Private Placement Memorandum for the IPofA Private Placement (the "PPM," attached as Exhibit A) contained a number of provisions that were designed to ensure that the investment was suitable for the investor. (See id.) In fact, the PPM had disclosure sections stating the following:

> A PURCHASE OF A PARCEL LEASEHOLD INTEREST IS A SPECULATIVE AND ILLIQUID INVESTMENT, INVOLVING A HIGH DEGREE OF INVESTMENT AND TAX RISK AND SIGNIFICANT RESTRICTIONS ON TRANSFER. AN INVESTMENT IN A PARCEL LEASEHOLD INTEREST SHOULD BE CONSIDERED ONLY BY SOPHISTICATED INVESTORS WHO ARE ABLE TO BEAR THE ECONOMIC RISKS OF THEIR INVESTMENT FOR AN INDEFINITE PERIOD OF TIME AND WHO CAN AFFORD TO SUSTAIN A TOTAL LOSS OF THEIR INVESTMENT. ALL PROSPECTIVE INVESTORS ARE URGED TO REVIEW THE POTENTIAL RISK FACTORS DETAILED IN THE "RISK FACTORS" SECTION OF THIS MEMORANDUM FOR A DETAILED DISCUSSION OF SOME FACTORS THAT SHOULD BE CONSIDERED IN CONNECTION WITH THE PURCHASE OF THE SECURITIES.

(See PPM, p. ii.) Further, the PPM contained a section entitled "Risk Factors," which outlined the following risks associated with investing in the IPofA Private Placement:

- The Offering Amount May Not Reflect the Fair Market Value of the Parcel Leasehold Interests.

- The Acquisition of Parcel Leasehold Interests May Be Delayed or Could Fail to Occur at All.

- There Are Substantial Risks Associated With the Federal Income Tax Aspects of Purchasing and Owning the Parcel Leasehold Interests, Especially if the Purchase Is Part of a Section 1031 Exchange.

- On or More Investors Could File for Bankruptcy, or Be Made the Subject of an Involuntary Bankruptcy Proceeding.

- One or More Investors Could Default Under Their Obligations.

(See PPM, pp. 13-25.)

In addition to the PPM, the IPofA Private Placement also included a form to be completed by the investor's broker-dealer. (See Compl. ¶ 30.) This form merely required that the broker-dealer represent that an investment in the IPofA was suitable for the particular investor. (See id. ¶¶ 30, 43.) In addition, this form required no representations by the broker-dealer regarding the IPofA Private Placement itself, which, as noted above, involved substantial risks for the potential investor.

**Plaintiffs Agree to Invest in the IPofA Private Placement**

Plaintiffs agreed to invest in the IPofA Private Placement. (See id. ¶ 36.) Pursuant to the PPM, an investment in the IPofA Private Placement had to be made through a broker-dealer who was a member of FINRA. (See id. ¶ 29.) McLamb, a registered representative associated with FINRA and Plaintiffs' personal broker, was advised by his employer, Edward Jones, that he would not be allowed to participate in the IPofA Private Placement. (See id. ¶ 33.) Seeking a broker-dealer that was able to participate in the IPofA Private Placement, McLamb was referred to Bolton to effectuate the purchase of the IPofA Private Placement for Plaintiffs. (See id. ¶ 31.)

The Complaint alleges that McLamb and Peck passed on certain unnamed information they received from Bolton to Plaintiffs. (<u>See</u> <u>id.</u> ¶ 34.) Notably, the Complaint fails to allege that Plaintiffs ever spoke with Bolton regarding the IPofA Private Placement. (<u>See</u> <u>generally</u> <u>id.</u> ¶¶ 31-39.)

On or about February 13, 2007, Plaintiffs went to Peck's office, where they completed the necessary forms to complete the investment, including the Investor Questionnaire which required that Plaintiffs each affirm that they were "accredited investors." (<u>See</u> <u>id.</u> ¶ 37; Newman Investor Questionnaire, attached as <u>Exhibit B</u>, p. 2; Register Investor Questionnaire, attached as <u>Exhibit C</u>, p. 2.) Thereafter, Peck forwarded the forms to Bolton, at which time he signed the above-referenced section regarding the suitability of the investment. (<u>See</u> <u>id.</u> ¶ 38.)

On or about February 26, 2007, Plaintiffs completed their investments in the IPofA Private Placement, agreeing to purchase sixty-four parcels leasehold interest units for $1,099,042.70 and to assume a portion of the mortgage on the property in the amount of $1,125,210.03. (<u>See</u> <u>id.</u> ¶¶ 37, 39.) Plaintiffs' total investment in the IPofA Private Placement was approximately $2.2 million. (<u>See</u> <u>id.</u> ¶ 37.)

**<u>The Potential Okun Merger and Okun's Subsequent Indictment</u>**

Almost <u>two</u> <u>years</u> <u>prior</u> to Plaintiffs' investment in the IPofA Private Placement or Plaintiffs' representatives contacting Bolton, Edward Okun ("Okun"), the head of IPofA, entered into discussions about acquiring FMFC. (<u>See</u> <u>id.</u> ¶ 43.) On or about May 5, 2006, FMFC entered into a merger agreement with two companies owned by Okun. (<u>See</u> <u>id.</u> ¶ 44.) On December 29, 2006, the Okun entities advised FMFC that they were terminating the merger agreement and abandoning the merger. (<u>See</u> <u>id.</u> ¶ 45.) On January 8, 2007, prior to Plaintiffs' investment in the IPofA Private Placement, FMFC filed suit against Okun, IPofA, and the Okun

entities for, among other things, their breach of the merger agreement. (See id. ¶ 46.) Pursuant to the Complaint, at the time that Plaintiffs agreed to invest in the IPofA Private Placement, FMFC and Okun or the Okun entities were not involved in a merger.

The Complaint further alleges that there was a criminal investigation into Okun. Specifically, the "federal criminal investigation [involved] the transfer of over $100 million of customer funds entrusted to Okun's wholly-owned '1031' exchange company, The 1031 Tax Group, LLC, to another Okun affiliate." (See id. ¶ 50.) The Complaint also alleges the investigation was referring to Okun's indictment for mail fraud, bulk cash smuggling and making a false declaration. (See id. ¶ 51.) Okun was indicted on or about March 17, 2008, and the indictment charged Okun with looting between $80 million and $135 million from several companies. (Id.)

**IPofA Leasco Files for Bankruptcy**

In June 2007, Okun advised the IPofA Private Placement investors that their monthly lease payments would be late. (See id. ¶ 58.) Thereafter, in July 2007, Greenwich Capital Financial Products, Inc. ("Greenwich Capital"), the company that loaned IPofA Leasco $86 million for the private placement, issued a formal default and acceleration of debt notice against IPofA Leasco and its affiliates to collect the mortgage on the debt. (Id.) In October 2007, IPofA Leasco filed for Chapter 11 bankruptcy protection. (See id.)

**Procedural History**

This action was initiated by service of a summons and complaint, dated July 22, 2008. The Complaint asserts four distinct causes of action: (1) fraud; (2) violation of the North Carolina Securities Act; (3) negligent misrepresentation; and (4) breach of duty of care. The

fraud action is brought against only Bolton, FMFC and FMSC, while the remaining causes of action are brought against Defendants.

**Argument**

**I.     STANDARDS**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a challenged pleading, but it does not resolve disputes surrounding the facts or the ultimate merits of a claim. See Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).  In deciding a motion to dismiss, the Court must assume the allegations in the complaint are true, and while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff has an obligation to provide the "grounds" of his "entitle[ment] to relief," which requires more than labels, conclusions and a formulaic recitation of the elements of a cause of action.  See Harrison v. Chalmers, 551 F. Supp. 2d 432, 436 (4th Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007)).  Further, in deciding a motion to dismiss under Rule 12(b)(6), the court's review includes those documents which are referred to in the complaint and relied upon by plaintiff in bringing the action, as well as those documents which are attached to the motion to dismiss, so long as they are integral to the complaint and authentic.  See New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am., 18 F.3d 1161, 1164 (4th Cir. 1994); Nobles v. North Carolina, No. 5:07-CV-381-F(2), 2008 WL 2037417, at *2 (E.D.N.C. May 12, 2008).  Here, the court's review would include the PPM and Investor Questionnaire, because Plaintiffs relied upon these documents in stating their causes of action against Defendants and  are attached hereto..  (See Compl. ¶¶ 23-30; Exhibits A-C.)

For the reasons discussed below, the Court should dismiss the Complaint in its entirety as against all Defendants.

## II.     THE COMPLAINT SHOULD BE
##          DISMISSED AGAINST BOLTON AND FMSC

### A.     Plaintiffs' Fraud Cause of Action is Deficient as a Matter of Law

Plaintiffs' fraud action against Bolton, FMFC and FMSC alleges that "Defendants

Bolton, FMFC and FMSC made false statements to Ms. Newman and Ms. Register, **or** their

representatives." (See id. ¶ 63.) (emphasis added)  Plaintiffs' fraud action fails to allege the

elements necessary to sustain it as a matter of law.  Moreover, Plaintiffs do not allege which of

Bolton's statements, if any, were communicated to them.  Rather, the Complaint makes clear that

Plaintiffs did not speak with Bolton or anyone at FMFC or FMSC and, therefore, could not have

relied upon any statements made to them in deciding to invest in the IPofA Private Placement.

Further, Plaintiffs fail to allege fraud under the heightened pleading requirements of Rule 9(b).

### 1.     Plaintiffs Fail to Properly Allege the Elements of Fraud

The elements of fraud are: (1) a false representation or concealment of material fact,

(2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact

deceive, (5) resulting in damage to the injured party.  See RD & J Props. v. Lauralea-Dilton

Enters., LLC., 165 N.C. App. 737, 744, 600 S.E.2d 492, 498 (2004) (quotation marks and

citations omitted.)  As discussed below, Plaintiffs have not satisfactorily alleged a fraud cause of

action.

Plaintiffs allege that Bolton made certain misrepresentations concerning the IPofA

Private Placement in order to induce Plaintiffs to agree to the investment.  (See Compl. ¶¶ 52, 53,

63.)  These alleged misrepresentations, even if true, are insufficient to state a cause of action for

fraud against Bolton, FMSC, and FMFC.  Specifically, Plaintiffs allege that Bolton

misrepresented the following:  1) that he was familiar with the IPofA Private Placement, 2) that

the IPofA Private Placement was the best product on the market, 3) that the mall was 90% leased

and had long-term leases with several anchor tenants, 4) that the business was generating sufficient rental income to pay the annual returns of 7% to 9%, 5) that the investment was secure, with a favorable debt to equity ratio and had significant cash reserves, 6) that investors had the right to require IPofA Leasco to purchase their investments after six years for the amount of their original investments plus a 30% premium, and 7) that Plaintiffs met the suitability requirements for the IPofA Private Placement. (See Comp., ¶ 52.)

Other than listing the above allegations, Plaintiffs do not address how the following statements were allegedly false: 1) that the West Oaks Mall was 90% leased with several anchor tenants such as Sears; 2) that the investors were purchasing actual interests in the mall property; 3) that investors had the right to require IPofA Leasco to purchase their investments after six years for the amount of their original investments plus a 30% premium; and 4) that Plaintiffs met the suitability requirements for the IPofA Private Placement. Instead, at most, Plaintiffs allege conclusory allegations regarding their suitability despite Plaintiffs' admission that they were "accredited investors." (Compare id. ¶ 3 with id. ¶ 28.)

In connection with the remaining alleged "misrepresentations," Plaintiffs attempt to turn those "misrepresentations" into omissions of material facts that Bolton failed to disclose concerning the IPofA Private Placement. (See id. ¶ 64.) Plaintiffs allege that Bolton failed to disclose that IPofA Leasco was insolvent (id. ¶ 54), that IPofA had not made mortgage payments in 2007 and financial information contained in audited financial statements as of December 31, 2006 (id. ¶¶ 54, 55), discussions of a conference call held by Okun (id. ¶ 55), documents received by Plaintiffs after September 14, 2007, which disclosed rental income for the West Oaks Mall and certain pledges owed to Greenwich Capital (id. ¶ 56), and the failure to disclose the relationship, if any, between Okun and FMFC (id. ¶ 57). Despite this recitation of "facts,"

Plaintiffs fail to allege the necessary element in order to plead a fraud cause of action, to wit, that Bolton was aware of these "facts," failed to disclose same to Plaintiffs, and that Defendants acted with scienter. See Forbes v. Par Ten Group, Inc., 99 N.C.App. 587, 594, 394 S.E.2d 643, 647 (1990) (quoting Ramsey v. Keever's Used Cars, 92 N.C.App. 187, 190, 374 S.E.2d 135, 137 (1988)) (explaining that a "defendant cannot 'be liable for concealing [or falsely representing] a fact of which it was unaware'"); accord Salit v. Stanley Works, 802 F. Supp. 728, 733 (D. Conn. 1992) (Plaintiffs' failure to allege knowledge of the individual defendants renders the Complaint defective pursuant to Rule 9(b)); see also Myers & Chapman, Inc. v. Thomas G. Evans, Inc., 323 N.C. 559, 568, 374 S.E.2d 385, 391 (1988) ("The term 'scienter' embraces both knowledge and an intent to deceive, manipulate or defraud.")

Moreover, many, if not all, of the asserted facts could not have been known to Bolton at the time Plaintiffs made the investment at issue. Indeed, Plaintiffs completed their investment in the IPofA Private Placement in or about February 2007. (See Comp., ¶¶ 37-39.) At that time, Bolton could not have had any knowledge of any statements made by Okun in a conference call, or documents received by Plaintiffs, in or about September 2007. In addition, Plaintiffs fail to allege when they received the audited financials, or that Bolton was in possession of such information at the time they made the investment, and failed to disclose same. Lastly, Plaintiffs' allegation relating to conflict of interests between Okun and FMFC is a red herring. Indeed, as Plaintiffs themselves allege, at the time that Plaintiffs agreed to invest in the IPofA Private Placement, FMFC and Okun or the Okun entities were not involved in a merger. (See id. ¶¶ 44-46.) Accordingly, Plaintiffs fail to allege that Bolton, FMSC, and FMFC made any false representation or omission of material fact, and satisfied the required scienter element for fraud.

2. Plaintiffs Did Not Rely Upon Bolton

Based upon legal advice they received from Peck and Alexander, Plaintiffs needed to invest in a 1031 exchange in order to defer the substantial capital gains tax that they would owe upon the sale of the Property. (See id. ¶ 16.) To consummate a like-kind exchange, Plaintiffs had **45** days from the sale of the Property to identify a like-kind replacement property and only **180** days from the date of the sale to close on the purchase of the replacement property. (See id. ¶ 18.) Given that the sale of the Property occurred in December 2006, Plaintiffs needed to identify a like-kind exchange with haste or suffer significant tax consequences. To this end, Plaintiffs' attorneys, Peck and Alexander, identified the IPofA Private Placement as a potential like-kind exchange. (See id. ¶ 16.) Notably, the Complaint is conspicuously silent as to whether Plaintiffs identified any other like-kind replacement properties.

With this background, Plaintiffs allege that Bolton made "misrepresentations" as discussed above regarding the IPofA Private Placement; however, they fail to allege that the purported "misrepresentations" were, in fact, made to them. In fact, Plaintiffs never allege that they directly spoke to Bolton; rather, only to their representatives. (See id. ¶¶ 31, 33-34, 36.) Without stating which alleged misrepresentations were communicated, Plaintiffs fail to show that they relied on the statements. Rather, in oblique fashion, Plaintiffs allege that "[i]n reliance upon information provided by Mr. Bolton to Mr. McLamb and Mr. Peck, and Mr. Bolton's non-disclosure of negative information concerning the IPofA Leasco offering, Ms. Newman and Ms. Register decided to invest the entire $2.2. million." (See id. ¶ 36.) Indeed, the Complaint fails to state that any of the alleged "misrepresentations" that were purportedly communicated to Plaintiffs' representatives were ever communicated to them. See Carlson v. Branch Banking Trust Co., 123 N.C. App. 306, 473 S.E.2d 631, 637 (1996) (upholding directed verdict in favor

of defendant where "[d]efendant made no representations to plaintiffs with respect to the transaction").

A claim for fraud will not stand when a plaintiff alleges that the misrepresentation in question was made to or relied on by a third-party. See Kelly v. L.L. Cool J., 145 F.R.D. 32, 38 n.8 (S.D.N.Y. 1992) (where the plaintiff claimed an alleged copyright infringement perpetrated a fraud on the copyright office or the general public, this was not sufficient to support a claim of fraud because the alleged misrepresentations were made to third parties); accord Wilson v. Dryvit Sys., Inc., 206 F. Supp. 2d 749, 755-56 (E.D.N.C. 2002).

In Wilson, plaintiff homeowners brought suit against the manufacturer of an allegedly defective cladding system. Id. at 752. In support of their fraud claim, Plaintiffs alleged that during the course of the marketing and promoting of the cladding system, the manufacturer made numerous material misrepresentations to third-parties, including governmental entities. Id. at 755. The Court stated that it was "unable to find any North Carolina cases in which a plaintiff has been permitted to recover on a fraud claim for misrepresentations that were made to third parties". Id. at 756.

Further, the PPM, the controlling document for the IPofA Private Placement, listed and explained the inherent and substantial risks associated with this investment:

- The Offering Amount May Not Reflect the Fair Market Value of the Parcel Leasehold Interests.

- The Acquisition of Parcel Leasehold Interests May Be Delayed or Could Fail to Occur at All.

- There Are Substantial Risks Associated With the Federal Income Tax Aspects of Purchasing and Owning the Parcel Leasehold Interests, Especially if the Purchase Is Part of a Section 1031 Exchange.

- On or More Investors Could File for Bankruptcy, or Be Made the Subject of an Involuntary Bankruptcy Proceeding.

- One or More Investors Could Default Under Their Obligations.

(See PPM, pp. 13-25.)  Moreover, the PPM contained the following disclosure:

> A PURCHASE OF A PARCEL LEASEHOLD INTEREST IS A SPECULATIVE AND ILLIQUID INVESTMENT, INVOLVING A HIGH DEGREE OF INVESTMENT AND TAX RISK AND SIGNIFICANT RESTRICTIONS ON TRANSFER. AN INVESTMENT IN A PARCEL LEASEHOLD INTEREST SHOULD BE CONSIDERED ONLY BY SOPHISTICATED INVESTORS WHO ARE ABLE TO BEAR THE ECONOMIC RISKS OF THEIR INVESTMENT FOR AN INDEFINITE PERIOD OF TIME AND WHO CAN AFFORD TO SUSTAIN A TOTAL LOSS OF THEIR INVESTMENT.

(See PPM, p. ii.)  Thus, the various documents that Plaintiffs reviewed with their representatives and executed in order to effectuate their investment in the IPofA Private Placement sufficiently disclosed the risks involved in the investment.  Thus, Plaintiffs' alleged reliance upon purported "misrepresentations" made to their representatives is defective as a matter of law.

Accordingly, Plaintiffs' fraud action should be dismissed in its entirety against Bolton, FMSC, and FMFC.

3. Plaintiffs' Fraud Claim is not
    Pled with the Requisite Particularity

Rule 9(b) requires that fraud causes of action must be pled with particularity, which is an exception to the general requirement that a plaintiff need only set forth a short and plain statement of the claim.[1]  See In re Inspire Pharm., Inc. Sec. Litig., 515 F. Supp. 2d 631, 636 (M.D.N.C. 2007); see also Breeden v. Richmond County College, 171 F.R.D. 189, 194 (M.D.N.C. 1997); U-Fill'er-Up, Inc. v. Egerton, No. 95cv95, 1996 WL 33676773 at, * 2 (M.D.N.C. March 1, 1996).  Specifically, Rule 9(b) provides that:

---

[1] The particularity of pleading fraud standard applies equally to negligent misrepresentation claims.  See Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp., 351 F. Supp. 2d 436, 447 (M.D.N.C. 2005) (holding that Rule 9(b) applies to negligent misrepresentation).

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed. R. Civ. P. 9(b). The Fourth Circuit has recognized that the "circumstances" required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby. See Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (citations omitted); Frank M. McDermott, Ltd. v. Moretz, 898 F.2d 418, 421 (4th Cir. 1990) (noting that "[i]t is well settled under North Carolina law . . . that a complaint claiming fraud is fatally defective unless it alleges detrimental reliance, and damages proximately flowing from such reliance with particularity) (citing Foley v. L & L Int'l, Inc., 88 N.C. App. 710, 714, 364 S.E.2d 733, 736 (1988)).

Here, Plaintiffs have completely failed to meet the pleading requirements of Rule 9(b). Plaintiffs fail to specify which information they received from McLamb and/or Peck or that the alleged "misrepresentations" made by Bolton were ever communicated to them. Indeed, Plaintiffs merely allege that McLamb and Peck passed on certain information they received from Bolton to Plaintiffs. (See Compl. ¶ 34.)

Thus, Plaintiffs fail to plead the fraud and negligent misrepresentation actions with particularity as required by Rule 9(b). Accordingly, Plaintiffs' First and Third Cause of Action should be dismissed.

**B.    Plaintiffs' Failure to Rely Upon Bolton's Statements Renders Their Negligent Misrepresentation Claim Defective**

A party establishes a claim for negligent misrepresentation when that party:

(1) justifiably relies, (2) to his or her detriment, (3) on information prepared without reasonable

care, (4) by one who owed the relying party a duty of care.  See Raritan River Steel Co. v. Cherry, Bekaert & Holland, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988).  As with the fraud claim, a claim for negligent misrepresentation will not stand if the complaining party did not directly rely on information provided by defendant.  Id. at 205-06, 367 S.E.2d at 612.

In Raritan, third-party creditors brought actions against an accounting firm and a number of its partners.  Id. at 203, 367 S.E.2d at 611.  The Raritan plaintiffs alleged that they extended credit to a company based upon an overstatement of the company's net worth contained in the audit reports prepared by the defendants and referenced in a separate report.  Id.  In holding for defendants, the Court dismissed the action and stated that a party cannot show justifiable reliance on information contained in audited financial statements without showing that he relied upon the actual financial statements themselves to obtain this information.  Id. at 207, 367 S.E.2d at 613.

As in Raritan, Plaintiffs cannot sustain a cause of action for negligent misrepresentation because Plaintiffs are alleging that they relied on a source other than Defendants, namely, their attorneys.  (See Compl. ¶¶ 31, 33-34.)  As noted above, Plaintiffs allege that McLamb and Peck passed on certain information they received from Bolton to Plaintiffs.  (See Compl. ¶ 34.)  Plaintiffs cannot sustain a claim of negligent misrepresentation without showing that they relied directly upon the statements of Bolton.

Lastly, under North Carolina law, omissions, like those alleged at the case at bar (see id. ¶¶ 54-57), cannot form the basis for a negligent misrepresentation claim.  See Breeden, 171 F.R.D. 189, 202-203 (M.D.N.C. 1997) (finding that the court has not located a case wherein North Carolina has extended the tort of negligent misrepresentation to cover "negligent omissions").  As noted above, the crux of Plaintiffs' allegations revolves around Bolton's alleged failure to disclose certain information.  (See Compl. ¶¶ 54-57.)  As such, Plaintiffs' allegations

regarding any purported omissions on the part of Defendants under this cause of action must be dismissed as a matter of law.

Accordingly, Plaintiffs' negligent misrepresentation claim against Bolton, FMSC and FMFC should be dismissed.

**C.      The Court Should Dismiss Plaintiffs'
Cause of Action for Violation
of the North Carolina Securities Act Fraud**

In their Second Cause of Action, Plaintiffs allege that the Defendants Bolton, FMFC and FMSC offered and sold them "Parcel Leasehold Interests in violation of G.S. 78A-56(a)(2), in that they offered and sold same by means of untrue statements of material fact and omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading." (See id. ¶ 71.)  As discussed above, Plaintiffs have failed to properly allege that Defendants made untrue statements of material fact and omissions to state material facts.  (See supra, pp. 13-17.)  Plaintiffs are not entitled to rely on their representatives' representations of what Defendants allegedly stated, without alleging that they did not know, and in the exercise of reasonable care, could not have known, of the untruth or omission.  See Bob Timberlake Collection, Inc. v. Edwards 176 N.C. App. 33, 41, 626 S.E.2d 315, 322 (N.C. App. 2006).  Accordingly, Plaintiffs fail to allege a sufficient claim for violation of the North Carolina Securities Act.

**D.      Plaintiffs' Breach of Duty Claim Is
Miscast as a Breach of Fiduciary Duty Claim**

Plaintiffs' breach of duty action should be dismissed because, under North Carolina law, Defendants did not owe a fiduciary duty to Plaintiffs.  Under North Carolina law, "[f]or a breach of fiduciary duty to exist, there must be a fiduciary relationship between the parties."  See Dalton v. Camp, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001).  While courts have been reluctant to

define conclusively the term "fiduciary relationship," the North Carolina Supreme Court defines such a relationship as one "where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." See Volumetrics Med. Imaging, Inc. v. ATL Ultrasound, Inc., 243 F. Supp. 2d 386, 404 (M.D.N.C. 2002) (quoting Abbit v. Gregory, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931)). Further, several factors are used to determine when a fiduciary duty exist, including "the degree of kinship between the parties, the disparity in age, health, mental condition and education and business experience between the parties; and the extent to which the "servient" party entrusted the handling of its business affairs to the "dominant" party and placed trust and confidence in it." See Rhone-Poulenc Argo S.A. v. Monsanto Co., 73 F .Supp. 2d 540, 546 (M.D.N.C.1999).

Initially, there was no degree of kinship between the parties, and but for IPofA Leasco's requirement that the investment be sold through a broker-dealer, Bolton did not have any connection with Plaintiffs. Moreover, as noted above, Plaintiffs' attorneys recommended IPofA Leasco's like-kind exchange product based upon their familiarity, and prior experience, with the product. (See Compl. ¶ 16.) Further, Plaintiffs do not allege that they ever spoke to Defendants; rather, they allege that Plaintiffs' representatives contacted Bolton. (See id. ¶ 34.) Thus, Plaintiffs were placing their trust in their attorneys to provide them with the necessary information with respect to the IPofA Private Placement, not Bolton. (Id.) For these reasons, Plaintiffs have failed to establish the necessary trust needed to allege that a fiduciary relationship arose between them and Defendants.

## III. PLAINTIFFS DO NOT ALLEGE A COGNIZABLE CAUSE OF ACTION AGAINST KURYLAK OR LEONARD

### A. North Carolina Securities Act

In their Second Cause of Action, Plaintiffs allege that the Defendants Kurylak and Leonard are liable to Plaintiffs pursuant to N.C. Gen. Stat. § 78A-56(c).  (See id. ¶ 73.)  This statute is North Carolina's "control person" liability statute.  The statute states that:

> Every person who directly or indirectly controls a person liable under subsection (a), (b), or (b)(1) of this section, every partner, officer or director of the person, ever person occupying a similar status or performing similar functions, and every dealer or salesman who materially aids in the sale is also jointly liable jointly and severally with and to the same extent as the person, unless able to sustain the burden of proof that the person did not know, and in the exercise of reasonable care could not have known, of the facts by reason of which the liability is alleged to exist.

In the most conclusory fashion possible and without alleging the basis for such liability, Plaintiffs contend that "Defendants Kurylak and Leonard are liable to Ms. Newman and Ms. Register pursuant to G.S. 78A-56(c)."  (See Compl. ¶ 73.)  As a preliminary matter, Defendants Kurylak and Leonard are not liable simply because they are officers or directors.  See Simkins v. Nat'l Executive Planners, Ltd., No. C-78-591-G, 1981 WL 1682 at * 7 (M.D.N.C. September 8, 1981) (where the court discusses that under North Carolina Law, N.C. Gen. Stat. § 78A-56(c) includes officers of entities as control persons but does not state that they are control persons because they are officers or directors).  Rather, it must be alleged that Defendants Kurylak and Leonard materially aided in the sale or even knew of the alleged fraud as required by section 78A-56(c).  Id.  In fact, Defendants Kurylak and Leonard are only mentioned when Plaintiffs state their positions at FMSC and when Plaintiffs seek to establish liability by making conclusory allegations in their claims for relief.  (See Compl. ¶¶ 10, 11, 73, 78, 83.)  Accordingly, Plaintiffs

fail to meet their burden in establishing that Kurylak and Leonard are control persons under section 78A-56(c) and further fail to allege a sustainable action the statute.

**B.**     **Negligent Misrepresentation**

As discussed above, in order to allege a proper negligent misrepresentation claim, a plaintiff must rely to his or her detriment on certain information.  See Raritan River Steel Co., 322 N.C. at 206, 367 S.E.2d at 612.  Plaintiffs fail to allege that Kurylak and Leonard provided any information to Plaintiffs.  Instead, Plaintiffs, in conclusory fashion, allege that "Defendants Kurylak and Leonard breached their duties to plaintiffs by failing to properly discharge their management and supervisory responsibilities with respect to Bolton, FMFC and FMSC".  (See Compl. ¶ 78.)  Notwithstanding this bald assertion, Plaintiffs fail to address how such an allegation, even if accepted as true, is an element under a negligent misrepresentation claim.  In short, it is not.  Accordingly, Plaintiffs' negligent misrepresentation cause of action against Kurylak and Leonard should be dismissed in its entirety.

**C.**     **Breach of Duty**

As stated earlier, under North Carolina law, a fiduciary duty will only exist if there is a fiduciary relationship between the parties.  See Dalton, 353 N.C. at 651, 548 S.E.2d at 707. Plaintiffs fail to plead a cause of action for breach of fiduciary duty as against Kurylak and Leonard.  As noted above, it was Plaintiffs' attorneys who recommended a like-kind exchange under Section 1031 of the Internal Revenue Code.  (See Compl. ¶ 16.)  Plaintiffs do not allege that Defendants Kurylak and Leonard participated in the sale or had any contact with Plaintiffs and, thus, were reposed with no special confidence on the part of Plaintiffs.

In connection with Kurylak and Leonard, Plaintiffs allege that they "failed to exercise ordinary care to properly supervise Mr. Bolton in accordance with industry standards and FINRA

Rule 3010 and failing to prevent the misconduct alleged herein." (Id. ¶ 83(7).)  It is well established that a private investor may not assert a claims for purported violation of NASD Rules.  In reviewing claims premised upon violations of rules promulgated by the NASD, the courts have held that Congress, when it enacted the Securities and Exchange Act of 1934, did not intend to create causes of action for violations of rules, including rules governing supervision, promulgated by self-regulatory organizations.  See, e.g., Jaksich v. Thomas McKinnon Securities, Inc., 582 F. Supp. 485, 499-500 (S.D.N.Y. 1984) (dismissing claims premised upon NYSE and NASD Rule violations, including supervision rules, because the legislative intent and scheme did not provide a private right of action to investors); Colman v. D.H. Blair & Co., Inc., 521 F. Supp. 646, 655 (S.D.N.Y. 1981) (dismissing claims premised upon violations of Section 27 of the NASD Code [now Rule 3010] because there is no private right of action for violation of NASD Rules and such claims "must be dismissed"); Gleusner v. Perlmutter, No. 96 CV 2970, 1996 U.S. Dist. LEXIS 22418 at *3 (S.D.N.Y. Nov. 22, 1996) (no private right of action based on NASD Rule violations); Newman v. L.F. Rothschild, Unterberg, Towbin, 651 F. Supp. 160, 162 (S.D.N.Y. 1986) (same); SSH Co. v. Shearson Lehman Bros., Inc., 678 F. Supp. 1055, 1058 (S.D.N.Y. 1987)(same); see also Emmons v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 532 F. Supp. 480, 485 (S.D. Ohio 1982) (dismissing claims that are premised upon alleged violations of NASD Rules, including Section 27 [failure to supervise]).

Accordingly, Plaintiffs fail to state a cause of action against Kurylak and Leonard.

## IV.    PLAINTIFFS' ALTER EGO CLAIMS AGAINST FMFC ARE DEFICIENT AS A MATTER OF LAW

Preliminarily, Plaintiffs improperly seeks to hold FMFC liable in this action based solely upon the fact that FMFC is FMSC's parent company.  (See Compl. ¶ 40.)  Ordinarily, a corporation retains its separate and distinct identity where its stock is owned partly or entirely by another corporation.  See B-W Acceptance Corp. v. Spencer, 268 N.C. 1, 8, 149 S.E.2d 570, 575 (1966); see also Troy Lumber Co. v. Hunt, 251 N.C. 624, 627, 112 S.E.2d 132, 134-135 (1960).  North Carolina uses the "instrumentality rule" to determine whether to disregard a corporate entity and hold a parent company liable for the acts of a corporation.  See Glenn v. Wagner, 313 N.C. 450, 454, 329 S.E.2d, 326, 330 (1985).  The North Carolina Supreme Court has enumerated three elements which support an attack on a separate corporate entity under the instrumentality rule:

>    (1)    Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own;

>    (2)    Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and

>    (3)    The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

B-W Acceptance Corp, 268 N.C. at 8, 149 S.E.2d at 576.

Here, Plaintiffs fail to allege that FMFC dominated FMSC in any way whatsoever.  Second, Plaintiffs fail to allege that any purported domination was used to commit a fraud or wrong against Plaintiffs.  Third, Plaintiffs fail to allege that any purported domination or breach of duty on the part of FMFC was the proximate cause of the monetary loss that they now

complain of.  In fact, the only allegation that Plaintiffs could possibly base its claim that FMFC should be held liable is that "FMFC operates Montauk Financial Group, a broker-dealer firm, through a subsidiary, defendant [FMSC]."  (<u>See</u> Compl. ¶ 7.)  As set forth above, such a bald assertion is plainly insufficient as a matter of law to establish liability on a parent company.

Accordingly, the Complaint should be dismissed as against FMFC.

**<u>Conclusion</u>**

For all the foregoing reasons, Defendants First Montauk Financial Corp, First Montauk Securities Corp., Kenneth R. Bolton, Victor K. Kurylak, and Celeste M. Leonard's motion should be granted and the Complaint should be dismissed in its entirety.

This the 23rd day of September, 2008.

/s/ Leslie C. O'Toole
Leslie C. O'Toole
NC State Bar No. 13640
Stephen D. Feldman
NC State Bar No. 34940
ELLIS & WINTERS, LLP
1100 Crescent Green, Suite 200
Cary, North Carolina 27518
Telephone:  (919) 865-7000
Facsimile:  (919) 865-7071

Attorneys for Defendants First Montauk Financial Corp., First Montauk Securities Corp., Kenneth R. Bolton, Victor K. Kurylak, and Celeste M. Leonard

<u>CERTIFICATE OF SERVICE</u>

The undersigned attorney for defendants First Montauk Financial Corp., First Montauk

Securities Corp., Kenneth R. Bolton, Victor K. Kurylak, and Celeste M. Leonard, hereby certifies

that on this day the foregoing Defendants' Motion to Dismiss was served upon the parties of

record in this action through electronic means by virtue of CM/ECF as follows:

Andrew O. Whiteman
Hartzell & Whiteman, LLP
2626 Glenwood Ave., Suite 500
Raleigh, NC  27608
919-571-8300 (telephone)
919-571-1004 (facsimile)
andywhiteman@hwlawyers.com

The undersigned attorney further certifies that on this day the foregoing Defendants'

Motion to Dismiss was served by U. S. First Class Mail, postage prepaid to the following:

C. D. Heidgerd, Esq.
P. O. Box 1166
Raleigh, NC  27602

This the 23rd day of September, 2008.

/s/ Leslie C. O'Toole
Leslie C. O'Toole
NC State Bar No. 13640
Stephen D. Feldman
NC State Bar No. 34940
ELLIS & WINTERS, LLP
1100 Crescent Green, Suite 200
Cary, North Carolina  27518
Telephone:  919-865-7000
Facsimile:   919-865-7010
stephen.feldman@elliswinters.com

*Attorney for Defendants*
*First Montauk Financial Corp., First*
*Montauk Securities Corp., Kenneth R.*
*Bolton, Victor  K. Kurylak, and Celeste M.*
*Leonard*