**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**SOUTHERN DIVISION**

**CIVIL ACTION No. 7:08-CV-00116(D)**

| | | |
|---|---|---|
| JEANETTE E. NEWMAN and NORMA E. REGISTER | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| FIRST MONTAUK FINANCIAL CORP., FIRST MONTAUK SECURITIES CORP., KENNETH R. BOLTON, VICTOR K. KURYLAK and CELESTE M. LEONARD | ) ) ) ) ) ) | **THIRD PARTY DEFENDANTS MARK MCLAMB'S AND EDWARD D. JONES & CO., L.P.'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY PROCEEDINGS** |
| Defendants and Third Party Plaintiffs | ) ) ) ) | |
| vs. | ) ) | |
| JOHN J. PECK, WILLIAM ALEXANDER, LEGACY LAWYERS, PLLC, MARK MCLAMB, and EDWARD D. JONES & CO., L.P., | ) ) ) ) ) | |
| Third Party Defendants | ) ) | |

Third Party Defendants Mark McLamb ("McLamb") and Edward D. Jones & Co., L.P.

("Jones")(collectively, "Jones and McLamb" or "Third Party Defendants"), by and through their

undersigned counsel, pursuant to Fed. R. Civ. P. 12(b)(1) and (3) and Section 3 of the Federal

Arbitration Act, 9 U.S.C. § 1 *et seq.*, respectfully file this Memorandum in Support of their

Motion to Compel Arbitration and to Dismiss or Stay Proceedings filed simultaneously with this

Memorandum.

## Statement of the Case

Jones and McLamb, as a Member and an Associated Person respectively of the Financial Industry Regulatory Authority ("FINRA"), are entitled to arbitration of all disputes with other current and former Members or Associated Persons of FINRA and its predecessor, the National Association of Securities Dealers ("NASD"), pursuant to FINRA Rule 13200. The Defendants/Third Party Plaintiffs are the only parties asserting claims against Jones or McLamb in this case. The Defendants/Third Party Plaintiffs were Members or Associated Persons of Members of FINRA at the time of all of the events complained of in this lawsuit. The definitions of "Member" and "Associated Person" under FINRA Rule 13100 make clear that all of the Third Party Plaintiffs and both Jones and McLamb are subject to the explicit arbitration requirements of FINRA Rule 13200. Under FINRA Rule 13200, Jones and McLamb are entitled to arbitrate this dispute. Consequently, Jones and McLamb respectfully request this Court to compel the Defendants/Third Party Plaintiffs to pursue this case in the proper forum – a FINRA arbitration – and to dismiss or stay this proceeding against Jones and McLamb.

## Procedural Summary

Plaintiffs initiated this lawsuit over one year ago on July 22, 2008, asserting various claims against the Defendants based upon violations of federal and state securities laws and other related theories. Defendants moved to dismiss on various grounds and this Court denied those motions. Thereafter, Defendants filed their Answer on July 16, 2009, including in their responsive pleadings a Third Party Complaint against Jones and McLamb, among others. Jones and McLamb obtained an extension of time to move, file responsive pleadings, or otherwise respond to the Third Party Complaint through and including September 11, 2009.

## Substantive Facts Supporting Motion to Compel Arbitration

On or about May 27, 1983, Third Party Plaintiff First Montauk Securities Corporation ("FMSC") became a member of FINRA's predecessor, the NASD. As a member of NASD, FMSC was assigned a Central Registration Depository ("CRD") number (13755) that allowed NASD and the general public to review certain information about FMSC. See Exhibit A to Jones and McLamb's Motion to Compel Arbitration ("Motion to Compel"), which was filed simultaneously with this Memorandum.

On October 16, 1939, Third Party Defendant Jones (CRD # 250) became a member of the NASD. See Exhibit B to Jones and McLamb's Motion to Compel.

As the result of the merger between the NASD and New York Stock Exchange Regulation, Inc. ("NYSE-R"), FINRA commenced operations as a new Self-Regulatory Organization ("SRO") on July 30, 2007. Accordingly, FMSC's and Jones's membership with NASD continued as membership with and in FINRA.

In August and September 2008, the SEC approved the FINRA Rules involving dispute resolution procedures for adoption as part of the Consolidated FINRA Rulebook.

The instant case was filed by Plaintiffs Jeanette Newman and Norma Register, against Defendants/Third Party Plaintiffs on July 22, 2008, when Defendants/Third Party Plaintiffs were still members or associated persons of FINRA. Defendants/Third Party Plaintiffs Kenneth R. Bolton ("Bolton")(CRD# 1086678), Victor K. Kurylak ("Kurylak")(CRD# 1664534), and Celeste M. Leonard ("Leonard")(CRD# 1258535) were Associated Persons of FMSC. See Exhibits C, D, E, and F to Jones and McLamb's Motion to Compel.

Third Party Defendant McLamb has been an Associated Person of Jones since August 1994. See Exhibit G to Jones and McLamb's Motion to Compel.

FMSC's membership with FINRA terminated on December 31, 2008.

## ARGUMENT

Pursuant to FINRA Rule 13200, Defendant/Third Party Plaintiff FMSC, as a former FINRA Member, and Defendants/Third Party Plaintiffs Bolton, Kurylak and Leonard, as former Associated Persons of a former FINRA member, are required to arbitrate disputes with FINRA member Jones and its Associated Person, McLamb.

FINRA Rule 13200(a) states:

> Except as otherwise provided in the Code, a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among:
>
> - Members;
> - Members and Associated Persons; or
> - Associated Persons.

See FINRA Rule 13200, attached as **Exhibit 1**.

FINRA Rule 13100(o) defines a FINRA member as follows:

> For purposes of the Code, the term 'member' means any broker or dealer admitted to membership in FINRA, *whether or not the membership has been terminated or cancelled*; and any broker or dealer admitted to membership in a self-regulatory organization that, with FINRA consent, has required its members to arbitrate pursuant to the Code and/or to be treated as members of FINRA for purposes of the Code, *whether or not the membership has been terminated or cancelled.* (Emphasis added.)

FINRA Rule 13100(r) defines an "Associated Person," also known as a "person associated with a member," as:

> (1)     A natural person registered under the Rules of FINRA; or
> (2)     A sole proprietor, partner, officer, director, or branch manager of a member, or a natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member, whether or not any such person is registered or exempt from registration with FINRA under the By-Laws or the Rules of FINRA.
>
> For purposes of the Code, a person formerly associated with a member is a person associated with a member.

See FINRA Rule 13100, attached as **Exhibit 2**.

With respect to disputes between NASD members and former members (and their associated persons), the court in *In Re Continental Broker-Dealer Corp. v. Gunnallen Financial, Inc.*, 368 B.R. 109 (Bankr. E.D.N.Y. 2007), held that a former NASD member and an associated person of a current member must arbitrate their disputes before NASD. In its analysis, the *Continental* court specifically noted:

> By becoming a member of the NASD, (the firm) agreed with the NASD to be bound by the rules and regulations of the association, including the NASD Code. Similarly, the Defendant, upon accepting employment with an NASD member became as an associated person of a member and agreed with the NASD to be bound by the regulations of the association, including the NASD Code.

*In re Continental* at 112. *See also, Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 n.2 (1991) (explaining that the NASD's Form U-4 agreement, signed by employees of the securities industry, is more correctly understood as an agreement between the signatory and the NASD.)

To further emphasize the point that NASD members and associated persons are bound by the terms of NASD regulations and Code, the *Continental* court noted language from *Beard v. American Express Financial Advisors, Inc.*, 01-4030-CV-C-5 (W.D.Mo. July 19, 2001) that,

> Numerous courts have indicated that an individual is bound by the arbitration provision contained in the NASD regulations if they join the NASD, even though they have no direct agreement to arbitrate with a covered third party. *See e.g., First Liberty Group v. Nicholsberg*, 145 F.3d 647, 653 (3d Cir. 1998) (stating that each member of NASD is contractually bound by its regulations – including all of its arbitration provisions); *Paul Revere Variable Annuity Ins. Co. v. Zang*, 81 F. Supp. 2d 227, 234 (D. Mass. 2000), *aff'd* by 226 F.3d 15 (1st Cir. 2000).

*In re Continental* at 112. See *Beard*, attached as **Exhibit 3**.

As previously noted, FINRA is the successor to NASD. FMSC and its former associated persons Bolton, Kurylak and Leonard are all still subject to the arbitration provisions of the

FINRA Code. Since they have a dispute with current FINRA member Jones and its associated person McLamb, and such dispute allegedly arises out of the parties' business activities, this Court should compel the Defendants/Third Party Plaintiffs to submit this dispute to FINRA arbitration.

### Impact of Federal Arbitration Act

The Federal Arbitration Act ("FAA") governs disputes concerning "a transaction involving commerce." 9 U.S.C. § 2. There is no doubt that the dispute in this case concerns a transaction in commerce between the Plaintiffs and the Defendants/Third Party Plaintiffs. Since the Defendants/Third Party Plaintiffs have in turn alleged in their Third Party Complaint that Jones and McLamb share culpability for the transactions at issue (which is specifically denied by Jones and McLamb), it is clear that the FAA governs. *See Southland Corp. v. Keating*, 465 U.S. 1 (1984); *Sillins v. Ness*, 164 N.C. App. 755, 596 S.E.2d 874 (2004).

In enacting the FAA, Congress declared a policy emphatically favoring arbitration, notwithstanding any state substantive or procedural policies to the contrary. *See Southland*, 465 U.S. at 12-13. Indeed, Congress intended the FAA to operate to get "parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). Accordingly, agreements to arbitrate are not to be avoided by allowing one party to ignore the contract or the operative documents governing associations, such as FINRA, and resort to the courts at their whim. See *Southland Corp.*, 465 U.S. at 7.

North Carolina also maintains a very strong public policy favoring arbitration. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Cyclone Roofing Co. v. LaFave Co.*, 312 N.C.

224, 229, 321 S.E.2d 872, 876 (1984). Under both federal and North Carolina law, the parties' respective agreements to arbitrate their disputes as members, former members, and associated persons of NASD and FINRA, should be enforced. To refuse to order the parties to arbitration would violate these principles.

## I.    Federal law mandates that this Court compel arbitration.

Among the purposes of the FAA is to encourage arbitration and permit parties who have agreed to arbitrate disputes to proceed without court-imposed delay. *Southland*, 465 U.S. at 10. Motions to compel arbitration under the FAA should not be denied "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Long v. Silver*, 248 F.3d 309, 316 (4th Cir. 2001) (quoting *United Steelworkers of America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960)).

The words "involving commerce" found in Section 2 of the FAA have been interpreted broadly by the Supreme Court. In holding that the basic purpose of the FAA is to overcome state courts' refusal to enforce arbitration agreements, the Court in *Allied-Bruce Terminix Companies v. Dobson*, 513 U.S. 265, 274 (1995), stated that the words "involving commerce" are the functional equivalent of "affecting commerce," which indicates congressional intent to fully exercise its commerce power.

The dispute at issue relates to Plaintiffs' employment of FMSC, its agents, affiliates, and employees of the affiliates, for the purchase and sale of investments, which activities were conducted through means of interstate commerce. Likewise, the FINRA membership agreement entered into by FMSC, Jones and their respective associated persons involves interstate commerce, and that the arbitration provision must be enforced under the FAA.

## II.    State law mandates that this Court compel arbitration.

North Carolina has a strong public policy favoring arbitration. *Servomation Corp. v. Hickory Constr. Co.*, 316 N.C. 543, 342 S.E.2d 853 (1986); *accord Tillman v. Commer. Credit Loans,* 362 N.C. 93, 108-09, 655 S.E.2d 362, 373 (2008) (plurality opinion). North Carolina courts apply a two-pronged test to determine whether a dispute is subject to arbitration. *Sloan Fin. Grp., Inc. v. Beckett*, 159 N.C. App. 470, 478, 583 S.E.2d 325, 330 (2003), *aff'd per curiam*, 358 N.C. 146, 593 S.E.2d 583 (2004). The court must ascertain (1) whether the parties had a valid agreement to arbitrate, and (2) whether the specific dispute falls within the substantive scope of that agreement. *Raspet v. Buck*, 147 N.C. App. 133, 136, 554 S.E.2d 676, 678 (2001).

In sum, the parties' membership in NASD and its successor FINRA reflects their understanding of the rights and responsibilities appertaining to FINRA members, including the provision of the rules requiring the mandatory arbitration of disputes between members, former members, and associated persons. Accordingly, there is a valid agreement to arbitrate.

Every one of Plaintiffs' allegations that form the basis of this dispute arise solely as the result of their relationship with FMSC and their transactions with FMSC's agents and affiliates. FMSC, Bolton, Kurylak and Leonard have in turn claimed that Jones and McLamb share some liability for the investment-related harm alleged by Plaintiffs, which Jones and McLamb dispute and intend to contest in the proper forum. Defendants/Third Party Plaintiffs should therefore be compelled to arbitrate because their FINRA membership requires the arbitration of such disputes with other FINRA members.

**III.** **The Third Party Complaint against Jones and McLamb should be dismissed because all claims are arbitrable and no issues remain to be decided by the Court.**

A court may dismiss, rather than stay, a case when all issues raised therein must be submitted to arbitration. *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration"); *Newcome v. Esrey*, 862 F.2d 1099, 1101 (4th Cir. 1988) (plaintiff's claim under § 10(b) of the 1934 Securities Exchange Act properly dismissed after court determined the claim was arbitrable under account agreement between customer and broker).

Although Third Party Defendants Jones and McLamb specifically deny all claims, it is apparent from the totality of the pleadings that Third Party Plaintiffs consider all of their claims to be closely interwoven with and/or arising from their relationship with the Third Party Defendants, as well as the Plaintiffs. Accordingly, since all claims asserted against Jones and McLamb by Third Party Plaintiffs are arbitrable under their NASD and then FINRA membership agreements and Rules, the Court may dismiss their Third Party Complaint against Jones and McLamb after ordering the claims to arbitration, there being no remaining controversy between the Third Party Plaintiffs and Jones and McLamb that requires decision by this Court.

## CONCLUSION

For the foregoing reasons, Third Party Defendants Jones and McLamb respectfully request that this Court compel the Defendants/Third Party Plaintiffs to submit this dispute to arbitration, and that the Court dismiss or stay this litigation pending the arbitration proceedings.

This the 11th day of September, 2009.

/s/ David N. Jonson
David N. Jonson
North Carolina Bar No. 27664
A. Lee Hogewood III
North Carolina State Bar No. 17451
K&L Gates LLP
4350 Lassiter at North Hills Ave., Suite 300
Raleigh, NC 27609
(919) 743-7300
Fax: (919) 516-2008
Email: david.jonson@klgates.com
Email: lee.hogewood@klgates.com
*Attorneys for Third Party Defendants Mark McLamb and Edward Jones & Co., L.P.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the within ***MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY*** was filed with the Clerk of Court for the Eastern District of North Carolina using the CM/ECF system, which will send notification of such filing to the following:

Andrew O. Whiteman
Hartzell & Whiteman, LLP
2626 Glenwood Ave., Suite 500
Raleigh, NC 27608
(919) 571-8300 (telephone)
(919)-571-1004 (facsimile)
andywhiteman@hwlawyers.com

Leslie C. O'Toole/Stephen D. Feldman
Ellis & Winters, LLP
1100 Crescent Green, Suite 200
Cary, NC 27518
(919) 865-7000 (telephone)
(919) 865-7010 (facsimile)
leslie.otoole@elliswinters.com
stephen.feldman@elliswinters.com

C.D. Heidgerd, Esq.
P.O. Box 1166
Raleigh, NC 27602
(919) 861-2484 (telephone)
(919) 861-2486 (facsimile)
cdh@heidgerdlaw.com

Charles George
Wyrick Robbins Yates & Ponton LLP
The Summit
4101 Lake Boone Trail, Suite 300
Raleigh, NC 27607
(919) 781-4000 (telephone)
(919) 781-4865 (facsimile)
cgeorge@wyrick.com

Michael Ference/Sameer Rastogi
Sichenzia Ross Friedman Ference, LLP
61 Broadway, 32nd Floor
New York, NY 10006
(212) 930-9700 (telephone)
(212) 930-9725 (facsimile)
mference@srff.com
srastogi@srff.com

William S. Cherry, III/Robert S. Shields, Jr.
JT Mlinarcik
Manning, Fulton & Skinner, P.A.
3605 Glenwood Ave., Suite 500
Raleigh, NC 27612
(919) 787-8880 (telephone)
(919) 325-4604 (Cherry facsimile)
(919) 325-4621 (Shields facsimile)
(919) 325-4619 (Mlinarcik facsimile)
cherry@manningfulton.com
shields@manningfulton.com
mlinarcik@manningfulton.com

This 11th day of September, 2009.

/s/ David N. Jonson

David N. Jonson
North Carolina Bar # 27664
K&L Gates LLP
4350 Lassiter at North Hills Ave., Suite 300
Raleigh, NC  27609
(919) 743-7300
Fax:  (919) 516-2008
Email:  david.jonson@klgates.com
*Attorneys for Third Party Defendants Mark McLamb and Edward Jones & Co., L.P.*

Exhibit 1



Print

## 13200. Required Arbitration

The Industry Code applies to claims filed on or after April 16, 2007. In addition, the list selection provisions of the Industry Code apply to previously filed claims in which a list of arbitrators must be generated after April 16, 2007; in these cases, however, the claim will continue to be governed by the remaining provisions of the old Code unless all parties agree to proceed under the new code.

### (a) Generally

Except as otherwise provided in the Code, a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among:

- Members;
- Members and Associated Persons; or
- Associated Persons.

### (b) Insurance Activities

Disputes arising out of the insurance business activities of a member that is also an insurance company are not required to be arbitrated under the Code.

Amended by SR-FINRA-2008-021 eff. Dec. 15, 2008.
Adopted by SR-NASD-2004-011 eff. April 16, 2007.

**Selected Notice:** 07-07, 08-57.

©2008 FINRA. All rights reserved.




Exhibit 2

Print

## 13100. Definitions

The Industry Code applies to claims filed on or after April 16, 2007. In addition, the list selection provisions of the Industry Code apply to previously filed claims in which a list of arbitrators must be generated after April 16, 2007; in these cases, however, the claim will continue to be governed by the remaining provisions of the old Code unless all parties agree to proceed under the new code.

Unless otherwise defined in the Code, terms used in the Code and interpretive material, if defined in the FINRA By-Laws, shall have the meaning as defined in the FINRA By-Laws.

### (a) Associated Person

The term "associated person" or "associated person of a member" means a person associated with a member, as that term is defined in paragraph (r).

### (b) Award

An award is a document stating the disposition of a case.

### (c) Board

The term "Board" means the Board of Directors of FINRA Dispute Resolution, Inc.

### (d) Claim

The term "claim" means an allegation or request for relief.

### (e) Claimant

The term "claimant" means a party that files the statement of claim that initiates an arbitration under Rule 13302.

### (f) Code

The term "Code" means the Code of Arbitration Procedure for Industry Disputes. For disputes involving customers, see the FINRA Code of Arbitration Procedure for Customer Disputes.

### (g) Counterclaim

The term "counterclaim" means a claim asserted against a claimant by a respondent.

### (h) Cross Claim

The term "cross claim" means a claim asserted by a respondent against another already-named respondent.

### (i) Customer

A customer shall not include a broker or dealer.

### (j) Day

Except as otherwise provided, the term "day" means calendar day. If a deadline specified in the Code falls on a Saturday, Sunday or any FINRA holiday, the deadline is extended until the next business day.

### (k) Director

The term "Director" means the Director of FINRA Dispute Resolution. Unless the Code provides that the Director may not delegate a specific function, the term includes FINRA staff to whom the Director has delegated authority.

### (l) Dispute

The term "dispute" means a dispute, claim or controversy. A dispute may consist of one or more claims.

**(m) Hearing**

The term "hearing" means the hearing on the merits of an arbitration under Rule 13600.

**(n) Hearing Session**

The term "hearing session" means any meeting between the parties and arbitrator(s) of four hours or less, including a hearing or a prehearing conference.

**(o) Member**

For purposes of the Code, the term "member" means any broker or dealer admitted to membership in FINRA, whether or not the membership has been terminated or cancelled; and any broker or dealer admitted to membership in a self-regulatory organization that, with FINRA consent, has required its members to arbitrate pursuant to the Code and/or to be treated as members of FINRA for purposes of the Code, whether or not the membership has been terminated or cancelled.

**(p) Non-Public Arbitrator**

The term "non-public arbitrator" means a person who is otherwise qualified to serve as an arbitrator and:

(1) is or, within the past five years, was:

(A) associated with, including registered through, a broker or a dealer (including a government securities broker or dealer or a municipal securities dealer);

(B) registered under the Commodity Exchange Act;

(C) a member of a commodities exchange or a registered futures association; or

(D) associated with a person or firm registered under the Commodity Exchange Act;

(2) is retired from, or spent a substantial part of a career engaging in, any of the business activities listed in paragraph (p)(1);

(3) is an attorney, accountant, or other professional who has devoted 20 percent or more of his or her professional work, in the last two years, to clients who are engaged in any of the business activities listed in paragraph (p)(1); or

(4) is an employee of a bank or other financial institution and effects transactions in securities, including government or municipal securities, and commodities futures or options or supervises or monitors the compliance with the securities and commodities laws of employees who engage in such activities.

For purposes of this rule, the term "professional work" shall not include mediation services performed by mediators who are also arbitrators, provided that the mediator acts in the capacity of a mediator and does not represent a party in the mediation.

**(q) Panel**

The term "panel" means the arbitration panel, whether it consists of one or more arbitrators.

**(r) Person Associated with a Member**

The term "person associated with a member" means:

(1) A natural person registered under the Rules of FINRA; or

(2) A sole proprietor, partner, officer, director, or branch manager of a member, or a natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member, whether or not any such person is registered or exempt from registration with FINRA under the By-Laws or the Rules of FINRA.

For purposes of the Code, a person formerly associated with a member is a person associated with a member.

**(s) Pleadings**

A pleading is a statement describing a party's causes of action or defenses. Documents that are considered pleadings are: a statement of claim, an answer, a counterclaim, a cross claim, a third party claim, and any replies.

**(t) Prehearing Conference**

The term "prehearing conference" means any hearing session, including an Initial Prehearing Conference, that takes place before the hearing on the merits begins.

## (u) Public Arbitrator

The term "public arbitrator" means a person who is otherwise qualified to serve as an arbitrator and:

(1) is not engaged in the conduct or activities described in paragraphs (p)(1)–(4);

(2) was not engaged in the conduct or activities described in paragraphs (p)(1)–(4) for a total of 20 years or more;

(3) is not an investment adviser;

(4) is not an attorney, accountant, or other professional whose firm derived 10 percent or more of its annual revenue in the past two years from any persons or entities listed in paragraphs (p)(1)–(4);

(5) is not an attorney, accountant, or other professional whose firm derived $50,000 or more in annual revenue in the past two years from professional services rendered to any persons or entities listed in paragraph (p)(1) relating to any customer disputes concerning an investment account or transaction, including but not limited to, law firm fees, accounting firm fees, and consulting fees;

(6) is not employed by, and is not the spouse or an immediate family member of a person who is employed by, an entity that directly or indirectly controls, is controlled by, or is under common control with, any partnership, corporation, or other organization that is engaged in the securities business;

(7) is not a director or officer of, and is not the spouse or an immediate family member of a person who is a director or officer of, an entity that directly or indirectly controls, is controlled by, or is under common control with, any partnership, corporation, or other organization that is engaged in the securities business; and

(8) is not the spouse or a family member of a person who is engaged in the conduct or activities described in paragraphs (p)(1)–(4). For purposes of this rule, the term immediate family member means:

(A) a person's parent, stepparent, child, or stepchild;

(B) a member of a person's household;

(C) an individual to whom a person provides financial support of more than 50 percent of his or her annual income; or

(D) a person who is claimed as a dependent for federal income tax purposes.

For purposes of this rule, the term "revenue" shall not include mediation fees received by mediators who are also arbitrators, provided that the mediator acts in the capacity of a mediator and does not represent a party in the mediation.

## (v) Related Claim

For purposes of Rule 13803, the term "related claim" means any claim that arises out of the employment or termination of employment of an associated person.

## (w) Respondent

The term "respondent" means a party against whom a statement of claim or third party claim has been filed. A claimant against whom a counterclaim has been filed is not a respondent for purposes of the Code.

## (x) Statement of Claim

The term "statement of claim" means the initial or amended claim filed by the party or parties initiating the arbitration.

## (y) Statutory Employment Discrimination Claim

The term "statutory employment discrimination claim" means a claim alleging employment discrimination, including a sexual harassment claim, in violation of a statute.

## (z) Submission Agreement

The term "Submission Agreement" means the FINRA Submission Agreement. The FINRA Submission Agreement is a document that parties must sign at the outset of an arbitration in which they agree to submit to arbitration under the Code.

## (aa) Temporary Injunctive Order

The term "temporary injunctive order" means a temporary restraining order, preliminary injunction or other form of initial, temporary injunctive relief.

**(bb) Third Party Claim**

The term "third party claim" means a claim asserted against a party not already named in the statement of claim or any other previous pleading.

Amended by SR-FINRA-2008-031. eff. Feb. 9, 2009.
Amended by SR-FINRA-2008-021 eff. Dec. 15, 2008.
Amended by SR-NASD-2007-021 eff. June 9, 2008.
Adopted by SR-NASD-2004-011 eff. April 16, 2007.

**Selected Notices to Member:** 07-07, 08-22, 08-57, 09-04.

©2008 FINRA. All rights reserved.


Not Reported in F.Supp.2d, 2001 WL 1231003 (W.D.Mo.)
**(Cite as: 2001 WL 1231003 (W.D.Mo.))**

**C**Only the Westlaw citation is currently available.

United States District Court, W.D. Missouri, Central
Division.
Paul BEARD, Plaintiff,
v.
AMERICAN EXPRESS FINANCIAL ADVISORS,
INC., Defendant.
**No. 01-4030-CV-C-5.**

July 19, 2001.

ORDER

LAUGHREY, District J.

**\*1** Pending before the Court is Defendant's Motion to
Stay Proceedings [Doc. 4]. For the reasons stated
below, the Motion will be granted.

I. Factual Background

Paul Beard ("Beard") began his relationship with IDS
Financial Services, Inc. ("IDS") on November 1,
1964. Beard was a financial planner and was classi-
fied as an independent contractor. Beard entered into
a financial planner's agreement with IDS on January
1, 1987. IDS is the predecessor to the Defendant,
American Express Financial Advisors, Inc. ("Ameri-
can Express").

Under the agreement, Beard sold IDS financial prod-
ucts and services, including annuities and insurance
policies. Beard had sole discretion concerning his
business hours and who to solicit for business. He
was solely responsible for paying taxes, government
and license fees, social security and other business
expenses. Beard was required to promptly deliver any
premium receipts, policies or contracts to IDS. More-
over, Beard had to follow IDS' rules and policies
concerning applications for annuity contracts and
insurance policies. Beard was not allowed to use any
information obtained during his work for IDS in a
manner adverse to the interests of IDS.

During his employment with IDS and then later,
American Express, Beard was registered with the
National Association of Securities Dealers, Inc.
("NASD"). Beard applied for registration with NASD
on January 17, 1973. The application contained a
provision indicating that Beard agreed to abide by,
comply with and adhere to all of NASD's regulations
as adopted, changed or amended. The regulations of
NASD include a Code of Arbitration Procedure
which provides that all business and employment-
related disputes between a member/member or mem-
ber/associated person must be arbitrated.

By the late 1990s, Beard's business was generating
"trailer commissions" of approximately $20,000 per
year, in addition to other sales commissions. "Trailer
commissions" are income commissions generated by
the accounts even if there is no additional sales or
activity in the account during the year. In early 1999,
American Express unilaterally re-assigned Beard's
accounts to another financial adviser. On March 1,
1999, American Express communicated directly with
Beard's clients and informed them that their new fi-
nancial adviser was Doris Dollar-Kiretech. The letter
sent to Beard's clients also indicated that Beard had
"decided to manage only his own accounts and those
of his family." Beard retired in November of 1999.
As of November 1, 1999, Beard's registration with
the NASD was terminated.

II. Discussion

The Federal Arbitration Act ("FAA") provides that "a
written provision in ... a contract evidencing a trans-
action involving commerce to settle by arbitration a
controversy thereafter arising out of such contract ...
shall be valid, irrevocable, and enforceable ...." 9
U.S.C. § 2. The FAA reflects a strong congressional
policy in favor of arbitration and requires courts to
enforce valid arbitration agreements. _Gilmer v. Inter-
state/Johnson Lane Corp., 500 U.S. 20, 26 (1991)_. If
a lawsuit is brought which is properly referable to
arbitration pursuant to a valid arbitration agreement,
the FAA mandates that courts stay the proceedings

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 1231003 (W.D.Mo.)
**(Cite as: 2001 WL 1231003 (W.D.Mo.))**

until an arbitration has occurred. 9 U.S.C. § 3. "The purpose of the FAA was to reverse judicial hostility to arbitration agreements and to place arbitration agreements on equal footing with other contracts." *Keymer v. Management Recruiters Int'l, Inc.*, 169 F.3d 501, 504 (8th Cir.1999).

**\*2** The Eighth Circuit has recognized that a dispute must be submitted to arbitration if there is a valid agreement to arbitrate and the dispute falls within the scope of that agreement. *Telectronics Pacing Systems, Inc. v. Guidant Corp.*, 143 F.3d 428, 433 (8th Cir.1998). "Arbitrability questions must be considered with a 'healthy regard for the federal policy favoring arbitration' and ... 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.' " *Keymer*, 169 F.3d at 504 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

However, the pro-arbitration policy of the FAA is not without limits. *Id.* It "does not operate without regard to the intent of the contracting parties, for arbitration is a matter of consent, not of coercion." *Id.* Accordingly, a party cannot be forced to arbitrate a type of dispute that he has not previously agreed to submit to arbitration. *Id.* In order to determine whether a stay of the proceedings is warranted under the FAA, courts should examine the following factors: 1) whether the parties agreed to arbitrate; 2) whether the FAA governs the agreement to arbitrate; and, 3) whether the claims at issue are arbitrable. *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 834-837 (8th Cir.1997).

A. Whether the parties agreed to arbitrate

1. Personal Financial Planner's Agreement

Beard argues first that the written agreement between the parties, the Personal Financial Planner's Agreement, neither contains an arbitration clause nor refers to the NASD or its articles or by-laws. Thus, Beard suggests that his dispute is not arbitrable because he had no direct agreement with IDS to arbitrate. The Court disagrees.

In *Bryant v. American Express Financial Advisors,*

*Inc.*, 595 N .W.2d 482 (Iowa 1999), the plaintiff was a sales representative for IDS Financial Services and its successor. The plaintiff signed a financial planner's agreement that did not refer to arbitration, however, he also applied for membership in the NASD. *Id.* at 483. After a dispute arose between the parties, the plaintiff filed a complaint in state court alleging conversion, breach of fiduciary duty and breach of the settlement agreement (the parties had previously been in a disability discrimination dispute which was settled). *Id.* at 483-84. The defendant moved to compel arbitration and the motion was granted. *Id.* at 484.

On appeal, the Supreme Court of Iowa noted that a party cannot be forced to arbitrate a dispute unless there is a valid agreement to arbitrate. *Id.* at 484. However, it determined that when the plaintiff signed his application to be registered with the NASD, he agreed to be bound by the regulations of the association, including the regulation requiring arbitration of disputes. *Id.* See also *First Liberty Investment Group v. Nicholsberg*, 145 F.3d 647 (3d Cir.1998). Thus, the court upheld the lower court's decision to compel arbitration of the dispute. *Id.*

**\*3** The instant case is analogous to the decision reached in *Bryant* . Although the Personal Financial Planner's Agreement signed by Beard does not refer to arbitration, Beard applied with the NASD and agreed to be bound by the regulations of NASD. Numerous courts have indicated that an individual is bound by the arbitration provision contained in the NASD regulations if they join the NASD, even though they have no direct agreement to arbitrate with a covered third party. *See e.g., First Liberty Group v. Nicholsberg*, 145 F.3d 647, 653 (3d Cir.1998) (stating that each member of NASD is contractually bound by its regulations-including all of its arbitration provisions); *Paul Revere Variable Annuity Ins. Co. v. Zang*, 81 F.Supp.2d 227, 234 (D.Mass.2000), *affd. by* 226 F.3d 15 (1st Cir.2000).

Thus, the Court finds that the mandatory arbitration provision of the NASD regulations will control if that provision covers Beard's dispute with IDS. Whether the mandatory arbitration provision covers Beard's dispute depends on whether the dispute is either between two members of NASD or between a member

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 1231003 (W.D.Mo.)
**(Cite as: 2001 WL 1231003 (W.D.Mo.))**

and an associated person.

2. NASD Regulations

In January of 1973, Beard applied for registration with NASD. The NASD application provides that applicants will accept and agree to abide by the regulations of NASD. The regulations of NASD include a Code of Arbitration Procedure. Rule 10101 of the NASD Code of Arbitration Procedure provides as follows:

10101. Matters Eligible for Submission

This Code of Arbitration Procedure is prescribed and adopted pursuant to Article VII, Section 1(a)(iv) of the By-Laws of the Association for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association, or arising out of the employment or termination of employment of associated person(s) with any member, with the exception of disputes involving the insurance business of any member which is also an insurance company.

(a) between or among members;

(b) between or among members and associated persons; ...

Rule 10201 of the NASD Code of Arbitration provides as follows:

10201. Required Submission

(a) Except as provided in paragraph (b) or Rule 10216, a dispute, claim, or controversy eligible for submission under the Rule 10100 Series between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), or arising out of the employment or termination of employment of such associated person(s) with such member, shall be arbitrated under this Code, at the instance of:

(1) a member against another member;

(2) a member against a person associated with a member or a person

(3) a person associated with a member against a person associated with a member....

The dispute between Beard and IDS clearly arises in connection with their business relationship. Thus, the first prong of Rule 10201 is met. Beard argues, however, that the second prong of the rule is not satisfied because his dispute is not a dispute between two current members or between a member and an associated person. Beard was not a member of NASD at the time suit was filed. Moreover, according to Beard, he was never "a person associated with a member" because he was an independent contractor for IDS and was never under its control.

**\*4** American Express contends that Beard is currently a person associated with a member. The NASD regulation relied on by American Express provides that a "person associated with a member" includes "(1) a natural person who is registered or has applied for registration under the Rules of the Association; (2) a sole proprietor, partner, officer, director, or branch manager of a member; or other natural person occupying a similar status or performing similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member ...." Given this definition, the Court does not agree that Beard is a current "person associated with a member". However, the Court finds that he was a "person associated with a member" when he served as an independent contractor for IDS.

In *First Liberty Investment Group v. Nicholsberg,* 145 F.3d 647, 651 (3d Cir.1998), the court examined the second prong of NASD Rule 10101. The court found that the defendant was an associated person within the meaning of the NASD Code because he was a natural person engaged in the securities business who was directly or indirectly controlled by a NASD member, the plaintiff. *Id.* at 651-52.

The plaintiff argued that the defendant could not be an associated person because the agreement between

Not Reported in F.Supp.2d, 2001 WL 1231003 (W.D.Mo.)
(Cite as: 2001 WL 1231003 (W.D.Mo.))

the parties specifically labeled the defendant as an independent contractor. *Id.* at 652. However, the court indicated that the independent contractor characterization was not controlling since the provisions of the agreement revealed a different type of relationship. *Id.* For instance, the plaintiff provided facilities for the defendant and in return, the defendant agreed not to open competing offices without the prior consent of the plaintiff. *Id.* The limitations placed by the plaintiff on the defendant and the conduct of the parties amounted to at least indirect control over the defendant, therefore, the court found that the defendant was an associated person under the NASD regulations. *Id.*

Based on the parties' relationship prior to the lawsuit when Beard was still working with American Express, the Court finds that Beard would be considered an individual associated with a member. The Personal Financial Planner's Agreement between the parties provides that Beard must follow all of IDS' rules and policies in seeking applications. It indicates that Beard cannot alter or change products or services offered by IDS and that any products or services submitted by Beard to IDS, or its successor, American Express, are subject to American Express' acceptance or rejection. These provisions indicate that American Express had at least indirect control over Beard during his employment with the company. *See First Liberty Investment Group,* 145 F.3d at 652.

Even if Beard were not a person associated with a member at the time of the dispute, he was himself a member and so was American Express. Hence, if his status is to be measured at the time the dispute arose, it is clear that the second prong of Rule 10201 is satisfied. Beard, however, argues that his status should be measured at the time suit was filed, when he was neither a member nor a person associated with a member.

\*5 Beard's primary argument in support of his position is that the present tense is used in the NASD regulations defining both member and person associated with a member, suggesting that his status at the time suit was filed is the relevant inquiry. However, if the Court were to evaluate Beard's status under NASD regulations at the time the lawsuit was initiated, it would allow plaintiffs like Beard to avoid the

mandatory arbitration provision of the NASD regulations simply by canceling their membership with NASD prior to filing suit for their grievances. Such action would thwart the mandatory arbitration provision of the NASD regulations.

Furthermore, the language of the Code of Arbitration Procedure suggests that the Code contemplates suits by former associated members. Rule 10216(f) provides in relevant part that "[i]f a member *or a current or former associated person of a member* files in court a claim against *a member or a current or former associated person of a member* that includes matters that are subject to mandatory arbitration, either by the rules of the association or by private agreement, the defending party may move to compel arbitration of the claims that are subject to mandatory arbitration" (emphasis added). Also, Rule 10101 and Rule 10201 of the NASD Code of Arbitration Procedures both refer to arbitration being available or mandatory in disputes "... arising out of the employment or termination of employment of associated person[s] with any member ...." Once an associated person is terminated, he would no longer be an associated person. Yet, the regulations suggest that arbitration is still available and under Rule 10201 mandatory.

Given the language of the NASD Code of Arbitration Procedures and Congress' policy in favor of arbitration, the Court finds that Rule 10201 covers Beard's dispute with American Express. Despite Beard's current status as a non-member of the NASD, he is still bound by the NASD Code of Arbitration as a member of the NASD at the time the dispute arose and as an individual who was associated with a NASD member (IDS) at the time the dispute arose.

B. Whether the FAA governs the agreement to arbitrate

If there is a valid arbitration agreement between the parties, the Court must next determine whether the FAA governs the agreement to arbitrate. There must be an arbitration agreement "evidencing a transaction involving commerce" in order for Beard's claims to be subject to arbitration under the FAA. 9 U.S.C. § 2. In *Allied-Bruce Terminix Companies, Inc. v. Dobson,* 513 U.S. 265, 273-74 (1995), the Supreme Court

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 1231003 (W.D.Mo.)
**(Cite as: 2001 WL 1231003 (W.D.Mo.))**

examined the language contained in 9 U.S.C. § 2 and concluded that the word "involving" should be broadly defined and was the functional equivalent to "affecting." The Court went on to analyze the "evidencing a transaction" language and held that it means that the transaction in fact involved interstate commerce, even if the parties did not contemplate an interstate commerce connection. *Id.* at 279.

*6 Numerous courts have held that the NASD arbitration clause "evinces a transaction involving commerce." *Austin Mun. Securities, Inc. v. National Ass'n of Securities Dealers, Inc.,* 757 F.2d 676, 697 (5th Cir.1985). *See also Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395, 401 n. 7 (1967); *Corey v. New York Stock Exchange,* 691 F.2d 1205, 1210 (6th Cir.1982). Accordingly, the Court finds that the NASD arbitration clause does evidence a transaction involving interstate commerce and, therefore, the FAA is applicable to the instant case.

C. Whether Beard's claims are arbitrable

Finally, the Court must determine whether Beard's claims contained in his Complaint are arbitrable. Beard's Complaint sets forth the following claims: tortious interference with business relationships, defamation, conversion and breach of contract. American Express asserts that each of these claims arise from or in connection with its business and involve rights and obligations arising out of Beard's former relationship with American Express.

Tort claims are contained within the scope of a broadly worded arbitration agreement, unless the agreement expressly excludes tort claims. *Zolezzi v. Dean Witter Reynolds, Inc.,* 789 F.2d 1447, 1449 (9th Cir.1986) (citing *Prima Paint,* 388 U.S. at 406-07)). For instance, in *Austin Municipal Securities, Inc. v. National Association of Securities Dealers, Inc.,* 757 F.2d 676 (5th Cir.1985), the court held that a stockbroker's defamation claim was subject to arbitration under the FAA.

In *First Investors Corporation v. American Capital Financial Services, Inc.,* 823 F.2d 307 (9th Cir.1987), both the plaintiff and the defendant were members of NASD. On appeal, the court was asked to determine whether the plaintiff's claims of breach of contract,

breach of fiduciary duties, interference with contractual and business relations, unfair competition and conspiracy in restraint of trade were subject to arbitration. *Id.* at 308. The court noted that the FAA establishes that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 309 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614 (1985)). Therefore, the court indicated that it would mandate arbitration of the matter if the NASD Code of Arbitration Procedure reasonably could be interpreted as applying to the causes of action alleged in the complaint. *Id.* The court stated that claims of unfair competition and interference with contractual and business relations are the very type of claims that the NASD Code contemplates. *Id.* The court noted that "[u]nfairly soliciting the accounts and employees of a competitor fits precisely within the scope of this language."

The NASD Code of Arbitration Procedures provides that any dispute "arising out of or in conjunction with the business of any member of the Association, or arising out of the employment or termination of employment of associated persons with any member" is covered by the provision. After reviewing the Counts contained in Beard's Complaint, the Court finds that the claims are all covered by the arbitration provision contained in the NASD regulations.

III. Conclusion

*7 Accordingly, it is hereby

ORDERED that Defendant's Motion to Stay Proceedings [Doc. 4] is GRANTED. It is further

ORDERED that this case be statistically closed, subject to be being reopened by the parties for judicial review following resolution of the pending arbitration.

W.D.Mo.,2001.
Beard v. American Exp. Financial Advisors, Inc.
Not Reported in F.Supp.2d, 2001 WL 1231003 (W.D.Mo.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 1231003 (W.D.Mo.)
**(Cite as: 2001 WL 1231003 (W.D.Mo.))**

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.